The Honorable  CHRISTOPHER M. ALSTON
Hearing Date:    October 18, 2017
Hearing Time:   1:00 p.m.
Response Date:  October 11, 2017
Kitsap County Courthouse
                  614 Division St.
                  Courtroom 104_
                  Port Orchard, WA 98366

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| In re | Case No. 17-10722-CMA |
| Eagle Harbor Holdings, LLC, | Chapter 7 |
| Debtor. | NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR RELATED RELIEF |

### NOTICE OF MOTION

NOTICE IS HEREBY GIVEN THAT: on **Wednesday, October 18, 2017, at 1:00 p.m.**, or as soon thereafter as counsel may be heard, Northwater Intellectual Property Fund L.P. 2 ("*Northwater*") will move the Court for an order in the form of Attachment 1 hereto granting relief from the automatic stay (the "*Motion*").

NOTICE IS FURTHER GIVEN THAT: should you desire to oppose the Motion you must, NO LATER THAN **Wednesday, October 11, 2017**, file your written response with the Bankruptcy Court Clerk's office and serve a copy on the undersigned counsel for Northwater, including the evidence, memoranda, and supporting papers you rely on in such opposition.  If you file a response you are also required to appear at the hearing.

MOTION FOR RELIEF FROM STAY – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

IF NO RESPONSE IS TIMELY FILED AND SERVED, THE COURT MAY, IN ITS DISCRETION, GRANT THE MOTION PRIOR TO THE HEARING WITHOUT FURTHER NOTICE, AND STRIKE THE HEARING.

## **MOTION**

Northwater Intellectual Property Fund L.P. 2 ("***Northwater***") hereby moves the Court for an Order terminating the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2) with respect to 32 patents and five patent applications in which Northwater has a first priority perfected security interest (the "***Northwater Collateral***") as more fully described below, allowing Northwater to exercise its right to conduct a foreclosure sale and either sell or take title to its collateral. Northwater also requests clarification and related relief respecting its rights under the various Loan Documents (as defined below).

This Motion is based on the following Memorandum of Points and Authorities, the Declaration of Daniel Mills In Support of Motion for Relief From Stay (the "***Mills Declaration***") filed herewith (including Exhibits A through K), the Declaration of Alan D. Smith In Support of Motion for Relief from Stay (the "***Smith Declaration***") filed herewith (including Exhibits L through Q), and all pleadings, papers and records on file with the Court, and such other evidence, oral or documentary, as may be presented to the Court with respect to this Motion. A form of proposed order granting the relief requested herein is Attachment 1 hereto.

In support of the Motion, Northwater represents as follows:

### I. The MediusTech Loan and the Loan Documents

1.     Eagle Harbor Holdings, LLC ("***EHH***" or "***Debtor***") filed its voluntary chapter 7 petition in this case on February 20, 2017 (the "***Petition Date***"). Dkt. No. 1. John

MOTION FOR RELIEF FROM STAY – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

136768786.2

Case 17-10722-CMA     Doc 46     Filed 09/22/17     Ent. 09/22/17 18:25:38     Pg. 2 of 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

Peterson was appointed as the Chapter 7 trustee (the "***Trustee***").  Dkt. No. 2.  The Trustee thereafter retained Alan Wenokur of Wenokur Riordan PLLC as counsel, Dkt. No. 17, along with Gregory Wesner of Lane Powell PC as special intellectual property counsel.  Dkt. No. 34.

2.      As far as Northwater is aware, or can be gleaned from the Schedules and Statement of Financial Affairs filed herein, EHH has only one significant asset – a portfolio of patents developed over a number of years by EHH's former principal Dan Preston ("***Preston***") and others.  From what Northwater can determine, there are a total of approximately 38 patents (of which 32 are pledged to Northwater) and 8 patent applications (of which five are pledged to Northwater) included within the portfolio.

3.      In 2010, Northwater loaned $2,000,000 U.S. (the "***MediusTech Loan***") to MediusTech LLC ("***MediusTech***") pursuant to the credit agreement dated November 16, 2010 (the "***Credit Agreement***").  A true and correct copy of the Credit Agreement is attached to the Mills Declaration as Exhibit A.  MediusTech is a wholly owned subsidiary of EHH.  MediusTech's and EHH's only business throughout the time Northwater has been dealing with them has been to develop patent applications and to monetize the resulting patents through licensing and litigation.  Mills Declaration, para. 2.

4.      Concurrently with the Credit Agreement, the MediusTech Loan (along with other obligations of MediusTech to Northwater) was guaranteed by debtor EHH pursuant to a Continuing Guaranty ("***EHH Guaranty***").  A true and correct copy of the EHH Guaranty is attached to the Mills Declaration as Exhibit B.  *Id*., para. 3.

5.      Concurrently with the Credit Agreement, MediusTech's obligations under the MediusTech Loan and EHH's obligations under the EHH Guaranty were secured by a Patent Security Agreement (the "***Patent Security Agreement***") covering a number of patents and

MOTION FOR RELIEF FROM STAY – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

patent applications then owned by EHH, along with extensions, continuations, renewals, and reissues as described in more detail therein (the "***Northwater Collateral***").  A true and correct copy of the Patent Security Agreement is attached to the Mills Declaration as Exhibit C.  *Id*., para. 4.

6.      Concurrently and thereafter, MediusTech, EHH, and Northwater entered into a series of amendments, letter agreements, side agreements, and other documents containing certain understandings of the parties respecting the Credit Agreement, EHH Guaranty, and Patent Security Agreement and related documents.  Among other things, during the several years following execution of the Credit Agreement, Northwater loaned significant additional sums to MediusTech and EHH, secured by the Northwater Collateral and the Patent Security Agreement, in order to fund litigation, including major litigation commenced against the Ford Motor Company, and for general working capital for the MediusTech/EHH patent monetization business.  True and correct copies of those additional documents are attached to the Mills Declaration collectively as Exhibit D.  Those additional documents, along with the Credit Agreement, EHH Guaranty, Patent Security Agreement, and Forbearance Agreement (described below) are referred to collectively as the "***Loan Documents.***"  *Id*., para. 5.

7.      Under the terms of the Patent Security Agreement, Northwater's security interest covers not only the patents and patent applications specifically listed in the Patent Security Agreement, but also any extensions, continuations, renewals, and reissues. Attached as Exhibit E to the Mills Declaration is a list of the patents and patent applications owned by EHH and covered by Northwater's security interest.  All of the patents and patent applications on Exhibit E are either specifically listed on the schedule to the Patent Security Agreement or are on their face identified as extensions or continuations of those specifically

MOTION FOR RELIEF FROM STAY – 4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

listed patents (or on their face extensions or continuations of other extensions and continuations). Exhibit F to the Mills Declaration is a chart showing how each patent on Exhibit E relates by extension or continuation to others. Accordingly, the list of patents and patent applications on Exhibit E constitutes the Northwater Collateral. *Id.*, para. 6.

8. MediusTech and EHH entered into a License Agreement – Medius dated May 1, 2010 (the "***MediusTech License***"), under which EHH licensed a portion of its patent portfolio to MediusTech. Northwater presumes the license was granted in order to facilitate the MediusTech/EHH patent monetization business. A portion of the Northwater Collateral is included within the technology covered by the MediusTech License. A true and correct copy of the MediusTech License is attached to the Mills Declaration as Exhibit G. See also *id.*, para. 7.

9. According to its Schedules, Dkt. No. 9, it appears EHH owns five other patents and three other patent applications not included within the Northwater Collateral (collectively referred to herein as the "***Other EHH Patent Rights***").

10. Under the original Loan Documents, the MediusTech Loan was due and payable in full no later than November 16, 2015, the fifth anniversary of the Credit Agreement. MediusTech did not pay the MediusTech Loan at that time, and EHH did not pay on account of its Guaranty at that time. *Id.*, para. 8.

11. After that default, effective as of December 30, 2015, MediusTech, EHH, and Northwater entered in a Forbearance Agreement pursuant to which Northwater agreed to forbear from exercising its rights and remedies against MediusTech and EHH, all on the terms and conditions set forth therein (the "***Forbearance Agreement***"). In the Forbearance Agreement, among other things MediusTech and EHH acknowledged the amount owing on the MediusTech Loan at that time was $7,002,902.26. A true and correct copy of the

MOTION FOR RELIEF FROM STAY – 5

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

136768786.2

Forbearance Agreement is attached to the Mills Declaration as Exhibit H. That $7,002,902.26 figure was a significant discount from the amounts that would have been owed absent the concessions made by Northwater in the Forbearance Agreement. *Id.*, para. 10.

12.     The Forbearance Agreement allowed EHH and MediusTech an opportunity to sell their patent portfolio or otherwise to arrange for substitute financing. They were unsuccessful in those efforts. The forbearance period expired over a year ago, and neither MediusTech nor EHH has paid the amounts due under the MediusTech Loan. Under the Forbearance Agreement, interest at the default rate of 14% commenced on the agreed upon amount of $7,002,902.26 on May 1, 2016, and has continued to date, compounded monthly. *Id.*, para. 11-15.

13.     As of February 20, 2017, the petition date herein, the amount owed to Northwater by MediusTech under the MediusTech Loan, and by Debtor EHH under the EHH Guaranty, was $7,839,787.50, and the amount owed as of October 31, 2017, will be $8,633,733.76, with additional interest continuing to accrue after October 31. Attached to the Mills Declaration as Exhibit K is a spreadsheet showing the interest computations.

## II. Perfection and the Debtor's Shenanigans

14.     Attached to the Smith Declaration as Exhibit L is a true and correct copy of results of a UCC Search recently conducted against EHH.

15.     On September 14, 2015, Northwater caused to be filed in the UCC financing records of the Washington Department of Licensing a UCC-1 financing statement, No. 2015-257-1533-6, perfecting Northwater's interest in the Northwater Collateral (the "***Northwater Financing Statement***"). A true and correct copy of the Northwater Financing

MOTION FOR RELIEF FROM STAY – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

136768786.2

Statement is attached to the Smith Declaration as Exhibit M and is also included within Exhibit L. Smith Declaration, para. 3.

16.     Attached to the Smith Declaration as Exhibit N is a true and correct copy of a recent sample search in the U.S. Patent and Trademark Office ("*USPTO*") covering one patent within the Northwater Collateral, showing Northwater's security filing with the PTO. Under governing Ninth Circuit law, a secured party need not file anything in the USPTO in order to perfect an interest in patents or patent applications. *In re Cybernetic Services, Inc.*, 252 F.3d 1039 (9th Cir. 2001). In any event, as can be seen from Exhibit N Northwater made such a filing.

17.     In early February 2017, after Northwater had delivered a Notice of Default to EHH and MediusTech, EHH apparently authorized two filings in the UCC filing records with the Department of Licensing: an amendment purportedly "deleting collateral" from the Northwater Financing Statement and another amendment purportedly terminating Northwater's Financing Statement. Those two documents are referred to herein as the "*Debtor's Unauthorized Filings*." The Debtor's Unauthorized Filings are included within Exhibit L to the Smith Declaration, the UCC search results.

18.     The Debtor's Unauthorized Filings were not authorized in any way, shape, or form by Northwater, the sole holder of rights as lender and secured party under the Loan Documents and the Northwater Financing Statement. Mills Declaration, para. 16. The Debtor's Unauthorized Filings were blatantly inappropriate and constituted a fraud on Northwater and on the UCC system.[1]

---

[1] There are provisions in the UCC allowing a debtor to file termination amendments when a debt has been satisfied in full and certain procedural steps are taken . RCW 62A-509(d); RCW 62A-513. Needless to say, those provisions are inapplicable here.

MOTION FOR RELIEF FROM STAY – 7

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

136768786.2

19.     Samuel S. Hemingway executed the Debtor's Unauthorized Filings on behalf of the Debtor.  At the 341 Initial Meeting of Creditors in this case, Mr. Hemingway admitted he did no research into the propriety of making such filings and that he made the filings at the direction of his boss Dan Preston.  Mr. Preston was present at the 341 meeting and did not deny or otherwise attempt to correct Mr. Hemingway's statements.  Smith Declaration, para. 12.

20.     Immediately upon learning of the Debtor's Unauthorized Filings, Northwater attempted to clean up the mess the Debtor had made with its Unauthorized Filings, by filing Information Statements in the UCC filing records making it clear the Debtor's Unauthorized Filings were in fact completely unauthorized and of no legal effect.  Those Information Statements are also included within Exhibit L, the UCC search results.  *Id.*, para. 7.

21.     Northwater has reserved all rights against EHH, MediusTech, and the individuals responsible for the Debtor's Unauthorized Filings, but has not yet brought any civil proceedings or filed any criminal complaints relating to the filings.  *Id.*, para. 13.

### III.  Prepetition Enforcement Actions

22.     On January 25, 2017, Northwater caused to be sent to MediusTech and EHH a Notice of Default and Acceleration.  *Id.*, para. 5 and Exhibit O thereto.

23.     On February 7, 2017, Northwater caused to be sent to MediusTech and EHH a Notification of Disposition of Collateral by Public Sale.  *Id.*, para. 8 and Exhibit P thereto. That Notification was sent to all known parties claiming a security interest in the Northwater Collateral.  The public sale described in such Notification of Disposition of Collateral was originally scheduled for February 20, 2017, and thereafter continued to February 21, 2017, on notice to all parties.

MOTION FOR RELIEF FROM STAY – 8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

24.     As part of the process of publicizing the upcoming foreclosure sale, Northwater also arranged for an ad to be placed in the national edition of the Wall Street Journal on Friday, February 10, 2017. A copy of the ad is attached to the Smith Declaration as Exhibit Q. Because of the cost of that kind of ad, it describes the collateral generally and contains a link to a website with a list of the actual patent and patent application numbers. Exhibit Q includes a copy of the document that is available on the website from following the link in the WSJ ad. *Id.*, para. 9.

25.     Debtor EHH filed its voluntary Chapter 7 petition the day before the scheduled foreclosure sale, on February 20, 2017. Because the petition was filed so close to the scheduled sale, Mr. Smith as Northwater's representative was present at the appointed time and place for the sale, in order to inform anyone interested in bidding on the assets of the filing and the automatic stay. No one appeared. *Id.*, para. 10.

26.     MediusTech is not a debtor in any proceedings under Title 11. Accordingly, actions against MediusTech are not subject to the automatic stay, and on March 7, 2017, Northwater commenced a lawsuit against MediusTech. Because Debtor EHH's schedules made it clear EHH was the owner of 100% of the shares of MediusTech, and because the Trustee immediately took appropriate actions on behalf of EHH as shareholder to ensure that the former officers of the subsidiary MediusTech would not have any continuing authority, Northwater has held that lawsuit in abeyance and it has never been prosecuted. *Id.*, para. 14.

### IV.  The Collateral

27.     Exhibit E to the Mills Declaration is the list of patents and patent applications included within the Northwater Collateral. Northwater's security interest was perfected by filing the Northwater Financing Statement in mid-2015, well outside the preference period. As demonstrated by the UCC search, Exhibit L, Northwater was the first to file a financing

MOTION FOR RELIEF FROM STAY – 9

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

statement against the Northwater Collateral. Northwater has a perfected first priority security interest in the Northwater Collateral.

28. Notwithstanding this clear record and straightforward logic, prior to the petition herein EHH's principal Dan Preston argued (and included within the Debtor's Unauthorized Filings) that Northwater's security interest was limited to the "field of use" of automotive infotainment. The Trustee is aware of Preston's argument and as far as Northwater knows has not adopted it, but also has not conceded the argument is without merit.

29. The argument is indeed without merit. First, the language of the Patent Security Agreement is not ambiguous. It includes in the definition of Collateral:

> all United States patents and certificates of inventions, or similar industrial property rights, and applications for any of the foregoing (collectively, the "Patents") relating to the Automotive Infotainment, including, without limitation, the patents and applications referred to in Schedule A hereto, . . . and all reissues, divisions, continuations, renewals, extensions and continuations-in-part thereof;

30. That language is clear. The listed patents and applications are included within the collateral. The phrase "relating to the Automotive Infotainment" is a descriptor – if there are other patents or applications owned by EHH in that area, they will be added to the list. But you cannot read that language as limiting the security interest in the listed patents to that particular "field or use" or otherwise as limiting the grant in any way. The grant on its face includes all of the patents on the list, plus continuations etc.

31. Second, it would be bizarre for a lender to advance significant money secured by a "field of use." By definition, this would become an issue only when the borrower has defaulted and the lender is foreclosing. A lender who took a security interest in a field of use (assuming that was possible, which it is not, see below) would then be forced to deal

MOTION FOR RELIEF FROM STAY – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

136768786.2

forever with the borrower – who just defaulted on the loan – over scope, respective use rights, infringement on the other's field, and similar things. It is near guaranteed misery for the lender who wants control of the patents and freedom from its defaulted borrower. It would make no sense.

32.     Third, there is no such thing as a security interest in a field of use. That is not a legally cognizable asset that can be encumbered. Is it possible to get to that result notwithstanding the lack of wisdom of the endeavor for the lender? Yes, by executing a license limited to the field of use (which is indeed possible), then granting a security interest in the license. But that clearly is not what happened here. The documents do not say that because they were not intended to say that.

33.     While this is an imperfect analogy, it is something like granting a deed of trust on your living room. You cannot do it – it's not a legal parcel. You might be able to accomplish mostly the same result by leasing or licensing the living room, then granting a security interest in the lease or license. But again, that is a very different structure and a very different set of documents.

34.     Finally, Preston's argument is inconsistent with the facts and is nothing more than an attempt to recast the deal years after the fact. The deal was a security interest in the listed patents and applications, plus others that might be (and were) developed in subsequent years. There was no such limitation to field of use. Mills Declaration, para. 21.

### V.  Relief from Stay is Appropriate Here

35.     Section 362(d) of the Code provides that relief from the automatic stay shall be granted "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. §362(d)(1). Relief from the automatic stay shall also be granted with respect to the stay of an act against property if "(A) the debtor

MOTION FOR RELIEF FROM STAY – 11

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."  11 U.S.C. §362(d)(2).  Northwater is entitled to relief from stay under both §362(d)(1) and (d)(2).

**A.      Relief From Stay Should Be Granted For Cause Under Section 362(d)(1).**

36.      The term "cause" is not defined in Section 362 or anywhere else in the Bankruptcy Code.  However, courts have considered "cause" in the context of Section 362 stay relief proceedings on many occasions, and have found cause for relief from stay in a variety of circumstances not involving a lack of adequate protection:

- The case was commenced in bad faith.  *In re Laguna Associates Ltd. Partnership*, 30 F.3d 734 (6th Cir. 1994).

- Litigation should be continued or commenced in another forum.  *In re Castlerock Properties*, 781 F.2d 159 (9th Cir. 1986).

- A claimant wants to pursue an insurance company that has provided coverage to the debtor.  *In re Fernstrom Storage & Van Co.*, 938 F.2d 731 (7th Cir. 1991).

37.      The point is not that those precise fact patterns are present here; the point is that this Court has the ability to grant relief from stay when the stay is no longer appropriate under the circumstances.   As the Ninth Circuit put it in *Castlerock*, "discretionary relief from the stay must be determined on a case by case basis."  781 F.2d at 163.  And as the Seventh Circuit noted in *Fernstrom*, "[s]uspension of [the automatic stay] may be consonant with the purposes of the Bankruptcy Act when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems."  938 F.2d at 735.

38.      Cause exists here.  This was a case commenced on the eve of foreclosure, long after the secured loan had matured, and after years of failed efforts to do something

MOTION FOR RELIEF FROM STAY – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

with the patent portfolio.  It may not fit squarely into the traditional bad faith filing box,

because there are other creditors and it was filed as a Chapter 7 case rather than a Chapter 11

case.  But even those "distinguishing" facts militate in favor of relief from stay.  Yes, there

are other creditors – but most of them go back many years, have never exercised any

remedies despite being unpaid millions of dollars for a decade or more,[2] and smell much

more like equity investors than true creditors.  And yes, this is a Chapter 7 case, so it does

not involve old management desperately attempting to hang on to power – but that makes it

look even more like a punitive last gasp effort from that old management to delay

Northwater's exercise of remedies rather than an effort to do anything in the way of

reorganization.

39.     These facts taken together constitute cause for discretionary relief from stay

under the first clause of Section 361(d)(1).

**B.      Relief From Stay Must Be Granted For Lack of Adequate Protection Under
          Section 362(d)(1).**

40.     Similarly, "adequate protection" is not defined in Section 362.  However,

Section 361 sets forth three non-exclusive examples of what may constitute adequate

protection:  (1) periodic cash payments equivalent to any decrease in value of the secured

party's interest in the collateral; (2) an additional or replacement lien on other property; or

(3) other relief that provides the "indubitable equivalent" of the secured party's interest in

the collateral.  11 U.S.C. § 361.  The Trustee can provide none of these forms of adequate

protection.

41.     To begin with, there is a need for some sort of adequate protection.  While it

---

[2]  Indeed, a review of the Schedules indicates most of the investment money dates back to before the Debtor's
formation in 2010, having apparently been assumed in connection with a corporate restructuring that predated
even the MediusTech Loan from Northwater.  Dkt. No. 9.

MOTION FOR RELIEF FROM STAY – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

is difficult to quantify the amount of ongoing diminution in value of the Northwater Collateral, it is clear there is some such diminution. These are patents. They have a limited life. As we get closer to their expiration, they will approach zero value. Their value is diminishing over time. Wasting more time without an immediate sale or foreclosure will erode the value even further. Adequate protection is needed.

42.     The estate has no way of providing any conceivable means of adequate protection. The estate has essentially no cash and no income, thus it is unable to make periodic adequate protection payments. The Schedules and SOFA make that clear.

43.     The estate does have a certain amount of unencumbered property on which the Trustee could offer replacement liens – the Other EHH Patent Rights, the remainder of the patent portfolio not included within the Northwater Collateral, consisting of five patents and three patent applications.[3] However, the Trustee apparently has no intention of offering that as adequate protection, but instead intends to maintain those assets free and clear of liens in order to provide a recovery for general unsecured creditors.[4]

44.     Finally, the Debtor's Schedules and SOFA document the Debtor's lack of any other significant assets and complete inability to offer any "indubitable equivalent" with which to protect Northwater's security position.

45.     In addition to the examples of adequate protection specifically listed in Section 361, some courts have found that an equity cushion, if sufficiently large and not subject to erosion, may provide adequate protection.[5] However, there does not appear to be

---

[3] The estate also owns all of the equity of MediusTech, but the Debtor acknowledges in the Schedules that equity is valueless. Dkt. No. 9. That acknowledgement is hardly necessary, given the lack of assets in MediusTech, the existence of the Northwater debt, and the millions of dollars of other debt at MediusTech.
[4] Northwater is prepared to cooperate with the Trustee in this endeavor by waiving its deficiency. See Section V-D below.
[5] *In re Kost*, 102 B.R. 829 (Bankr. D. Wyo. 1989); *In re Chauncey St. Assoc. Ltd. Partnership*, 107 B.R. 7 (Bankr. D. Mass. 1989); *In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1988); but see, *Margell v. Bouquet*

MOTION FOR RELIEF FROM STAY – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

136768786.2

any equity cushion whatsoever in the Northwater Collateral, see the next section of this Motion.  Indeed, Northwater is significantly undersecured and, as a result of the diminution in value and increased interest, were there any such cushion (which there is not) it would rapidly be eroding.

46.     This estate has no available unencumbered property, no equity cushion, no other assets, no cash and no income.  There is simply no way for Northwater's eroding value security interest to be adequately protected.  Thus, relief from stay is mandated by the second clause of §362(d)(1), lack of adequate protection.

**C.     Relief From Stay Must Be Granted Under Section 362(d)(2) Because the Debtor Has No Equity In the Northwater Collateral and the Northwater Collateral Is Not Necessary to an Effective Reorganization.**

47.     Section 362(d)(2) of the Code provides that the Court shall grant relief from the automatic stay if:  (1) the Debtor does not have any equity in the collateral at issue and (2) the collateral is not necessary to an effective plan of reorganization.  Both elements of §362(d)(2) must be met:  there must be no equity <u>and</u> the property must be unnecessary for effective reorganization.  See*, e.g., In re Egea*, 167 B.R. 226 (Bankr. D. Kan. 1994).

48.     A debtor has no equity in property for purposes of §362(d)(2)(A) when the total debt secured by liens on the property equals or exceeds the value of the property.  *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197 (3d Cir. 1995).  For purposes of § 362(d)(2)(A), <u>all</u> liens, including those senior and junior to the moving party's lien, are considered in determining whether the debtor has equity in the property.  *Stewart v. Gurley*, 745 F.2d 1194, 1196 (9th Cir. 1984).

---

*Investments, (In the Matter of Bouquet Investments)*, 32 B.R. 988 (Bankr. C.D. Cal. 1983) (equity cushion alone insufficient to support continuation of automatic stay); *Kelley v. Embrey, (In the Matter of Embrey)*, 56 B.R. 626 (Bankr. W.D. Mo. 1986).

MOTION FOR RELIEF FROM STAY – 15

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

49.     The total secured debt against the Northwater Collateral is somewhat difficult to discern as a result of some questionable transactions appearing in the record. According to the Debtor's schedules in this case, Northwater is the only secured creditor. Schedule D, Dkt. No. 9. That is, in fact, Northwater's understanding, see Mills Declaration para. 17. However, according to the UCC filings, Exhibit L, at least two other entities at one point claimed an interest in the Northwater Collateral: Mirai Ventures LLC and Clarovia, LLC.

50.     Mirai filed a UCC-1 financing statement against the Debtor on January 27, 2017, after Northwater gave the Notice of Default under the MediusTech Loan. Mirai's interest has never been clarified; it is likely it never did the purported financing deal that would have led to a perfected security interest, but one cannot be sure. Mills Declaration, para. 19; Smith Declaration, para. 11.

51.     Clarovia is apparently another company owned by Dan Preston, the former principal of the Debtor; it filed a UCC financing statement against the Debtor on January 30, 2017 (again, after EHH received the Notice of Default from Northwater), attaching a promissory note dated January 27, 2017 and apparently based on old alleged obligations of the Debtor to Clarovia. The Clarovia security interest is clearly avoidable, but as far as Northwater is aware Clarovia has neither admitted that nor done anything to remove it from the UCC records. Smith Declaration, para. 11.

52.     In any event, even without considering the Mirai and Clarovia liens, the Northwater Collateral is subject to Northwater's claims, which exceed $8.6 million. Mills Declaration, para. 15 and Exhibit K.

53.     The value of the Northwater Collateral is also difficult to ascertain with certainty, but all available evidence points to a value considerably lower than the amount of

MOTION FOR RELIEF FROM STAY – 16

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

Case 17-10722-CMA    Doc 46    Filed 09/22/17    Ent. 09/22/17 18:25:38    Pg. 16 of 22

the outstanding debt against it.

- The Debtor indicated a book value for all of its patent portfolio – both the Northwater Collateral and the other patents not included in the Northwater Collateral – as approximately $6.4 million.  Schedule A filed herein, Dkt. No. 9.

- For years prior to the bankruptcy, MediusTech and EHH attempted to "monetize" the patent portfolio by suing others who were allegedly infringing the patents.  That effort was underway for many years even before Northwater made the MediusTech Loan.  After the MediusTech Loan, millions of dollars (Northwater's dollars) were spent on a lawsuit against Ford Motor Company, which unfortunately was unsuccessful.  Mills Declaration, para. 9.

- After the MediusTech Loan had matured and was in default, in accordance with the Forbearance Agreement MediusTech and EHH attempted to find a buyer for the portfolio.  They retained a reputable patent broker, David Smith and Tynax, Inc., who contacted over 150 potential buyers and tried to sell the portfolio for over eight months; Northwater held off for months after the Forbearance Agreement expired to allow that process to continue.  *Id.*, para. 12 and Exhibits I and J.  Exhibits I and J contain lengthy descriptions of the extensive efforts undertaken by David Smith and Tynax.

- Despite these efforts, MediusTech and EHH were unsuccessful in bringing anyone to the table other than a long term speculative play (interestingly, led by Mirai Ventures) that provided no cash to any of the parties in interest and no assurance whatsoever there would ever be any cash.  *Id.*, para. 13.

- Since the bankruptcy filing, the Trustee has apparently continued to engage in such efforts. Northwater has not executed any confidentiality or nondisclosure agreements, but does not

MOTION FOR RELIEF FROM STAY – 17

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

wish to violate any such understandings so will not use any numbers. But Northwater can

disclose that to date it has been informed of only two postpetition offers for any or all of the

patent portfolio. One was for very little money for two patents not included in the

Northwater Collateral (and thus of little interest to Northwater) but which was quickly

withdrawn by the buyer; the other was purportedly for the whole portfolio (both Northwater

Collateral and the Other EHH Patent Rights) but was for only a small fraction of the

Northwater debt and in any event was rejected by the Trustee without a counter and without

even asking Northwater whether it was worth pursuing. *Id.*, para. 20.

54.     In short, the only cash offers to date – after years of marketing the patent

portfolio, both prepetition and postpetition – would have yielded only a small fraction of

what is owed Northwater. The Northwater debt exceeds the value of the Northwater

Collateral. The estate has no equity in the collateral.

55.     Further, in order to avoid the consequences of Section 362(d)(2) a debtor

must do more than simply claim that no reorganization is possible without the Property.

*United States Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365,

375-76 (1988). The debtor must also show that there is reasonable possibility of an *effective*

reorganization. *Id.* This means there "must be a reasonable possibility of a successful

reorganization within a reasonable time" and that the property at issue is necessary to that

reorganization. *Id.* See also *In re Dublin Properties*, 12 B.R. 77, 80 (Bankr. E.D. Pa. 1981)

("If all the debtor can offer at this time is high hopes without any financial prospects on the

horizon to warrant the conclusion that a reorganization in the near future is likely, it cannot

be said that the property is necessary to an 'effective' reorganization.")

56.     <u>This is a Chapter 7 case</u>. There will be no reorganization here; it is a

liquidation case. There cannot possibly be a reorganization of any sort, much less an

MOTION FOR RELIEF FROM STAY – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

136768786.2

effective reorganization.

**D.   At the Requested Foreclosure Sale, Northwater Has the Right to Credit Bid Up to the Amount of its Debt**

57.   Under Section 363(k) of the Bankruptcy Code, Northwater – as secured creditor with interests in all of the Northwater Collateral – has the right to credit bid up to the amount of its debt in any 363 sale conducted in this case.  It goes without saying the same rule will apply in the foreclosure sale Northwater intends to conduct if relief from stay is granted as requested in this Motion.

58.   Northwater is sensitive to the concerns some may express over the possibility that Northwater will conduct a foreclosure sale in a manner that hurts other creditors, by underbidding and leaving a large deficiency claim, thus diluting other creditors' recoveries.  If Northwater is granted relief from stay and other requested relief on a reasonable schedule in response to this Motion, Northwater will waive any deficiency remaining against the EHH estate after the sale.  Mills Declaration, para. 22.

**E.   The MediusTech License is of No Further Force and Effect**

59.   To the extent it has any validity at all, the MediusTech License is an executory contract within the meaning of Section 365.  As such, it was rejected by EHH as a matter of law on April 21, 2017, 60 days after the order for relief.  Section 365(d)(1).

60.   The MediusTech License appears to be a license of intellectual property within the meaning of Section 365(n).  If so, MediusTech as nondebtor party would have the right to treat the license as terminated or to retain certain rights.  Section 365(n)(1)(A) and (B).  Here, MediusTech is a valueless shell with no assets, millions of dollars of liabilities, and no ability to maintain any business operations.  It is a wholly owned subsidiary of a Chapter 7 debtor.  Having done nothing in the six months since the license

MOTION FOR RELIEF FROM STAY – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

was rejected, MediusTech must be deemed to have elected to treat the license as terminated.

## VI.  Conclusion

61.     For seven years the Debtor and now the Trustee have tried to put together some kind of program that would pay off Northwater and provide a return to other creditors. It did not work for the Debtor; and it is not working for the Trustee.  There is no reasonable prospect of a sale.  The estate has no cash, no unencumbered property other than the Other EHH Patent Rights (which have also proven essentially unsalable), and no means of providing adequate protection to Northwater.  All the Trustee can offer is the same "high hopes" the Debtor has had all these years:  somehow we'll come up with something that will pay off in the end.

62.     Northwater should not have to wait any longer.  These are wasting assets: patents have expiration dates, and those dates are approaching in a few years.  If relief from stay is granted on a normal schedule in response to this Motion, Northwater will waive any deficiency claim and the Trustee can try to market the remaining patents in whatever way he chooses.  But Northwater wants to – and has a right to – control its own destiny and its collateral.

MOTION FOR RELIEF FROM STAY – 20

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

136768786.2

63.    We are seven months into this Chapter 7 case.  Chapter 7 is entitled "Liquidation."  It is the job of a Chapter 7 trustee to liquidate the assets of the estate, not to organize and manage a complicated litigation and licensing "monetization program."  It is past time to liquidate the assets.  Northwater has demonstrated cause for relief from stay. The Court should enter an Order in the form attached hereto so that Northwater can foreclose on its collateral and get on with its business.

DATED:  September 22, 2017

**PERKINS COIE** LLP


By:      /s/ Alan D. Smith
Alan D. Smith, WSBA No. 24964
ADSmith@perkinscoie.com
James F. Williams, WSBA No. 23613
JWilliams@perkinscoie.com
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Secured Creditor
Northwater Intellectual Property Fund L.P. 2

MOTION FOR RELIEF FROM STAY – 21

136768786.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

# **ATTACHMENT 1**

# **FORM OF PROPOSED ORDER**

See attached form of Order and attached list of Northwater Collateral.

MOTION FOR RELIEF FROM STAY – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

136768786.2